UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEAL DAVIS,<br><br>Defendant. | Case No. 1:26-po-00050-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS (Dkt. 14); MOTIONS TO SUPPRESS (Dkts. 15, 16)** |

Pending are three pretrial motions brought by Defendant: a motion to dismiss (Dkt. 14) and two motions to suppress evidence (Dkts. 15, 16). A bench trial is set for June 2, 2026 at 10:00 a.m. Mountain Time (Dkt. 19). The Court held a pre-trial conference on May 26, 2026, and heard oral argument on the motions. After hearing argument, the Court issued an oral ruling denying each of Defendant's motions (Dkt. 23). The Court now issues this written order explaining its denial of Defendant's motions in more detail.

## I.     BACKGROUND

This case involves Defendant's alleged possession of a firearm on federal property. On August 28, 2025, Defendant visited the Boise United States Department of Veterans Affairs Medical Center ("VAMC"). An employee of the VAMC noticed a bulge underneath Defendant's t-shirt that appeared to him to be in the outline of a handgun in Defendant's right waistband. The VAMC employee reported his observation to the VA Police. A VA Police officer, Andrew Davey, responded, and with the assistance of the VAMC employee, located Defendant on the third floor of the VAMC. He followed behind Defendant for approximately 50 yards and noticed

the same bulge underneath his t-shirt in the outline of a revolver in his right waistband. Officer Davey based his conclusion on 11 years of training and experience as a law enforcement officer.

Officer Davey contacted Defendant and asked him if had a firearm on his person. Defendant refused to answer the question and asked what gave Officer Davey the right to search him. Officer Davey advised Defendant that he could see the outline of a gun underneath his shirt. Defendant responded "it could be anything." Officer Davey replied that he was "allowed to *Terry* frisk you to search for weapons. I have a suspicion."

Officer Davey then touched the object on the outside of Defendant's shirt, lifted his shirt, and recovered a Ruger LCR revolver, loaded with .38 caliber ammunition, from a nylon holster on Defendant's waistband. He then felt outside of Defendant's left pocket and stated "I can feel extra cartridges." From Defendant's left pocket, VA Police Officer J. Richards assisted and recovered a speed ammunition loader with 5 additional rounds. Officer Davey cited Defendant for possessing a firearm on federal property and this prosecution ensued.

On March 9, 2026, the government filed an Information charging Defendant with possession of a firearm on federal property, in violation of 38 C.F.R. § § 1.218(a)(13) & (b)(37) (Dkt. 2). Defendant initially appeared on the information on March 25, 2026, representing himself *pro se*, and entered a plea of not guilty. On April 6, 2026, the government filed an amended information clarifying that the charge was a Class B misdemeanor (Dkt. 8).

## II.    LEGAL STANDARDS

The following legal standards apply to Defendant's motions.

### a.  Motion to Dismiss

A defendant may file a pretrial motion to dismiss the criminal charges pending against him. He may seek dismissal of a charge against him on the grounds that the statute authorizing

the charge is unconstitutional. Rule 12(b) of the Federal Rules of Criminal Procedure allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion to dismiss is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).

### b. Motion to Suppress

A criminal defendant may also move to suppress evidence. Fed. R. Crim. P. 12(b)(3)(C). When law enforcement violates a defendant's Fourth or Fifth Amendment rights, the exclusionary rule mandates that "illegally seized evidence" cannot be used "against the search victim in a criminal trial." *United States v. Calandra*, 414 U.S. 338, 350 (1974). On a motion to suppress, the defendant bears the ultimate burden of proving a constitutional violation. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005).

### III.    ANALYSIS

The Court next analyzes each of Defendant's motions in turn.

### a.  Defendant's Motion to Dismiss (Dkt. 14)

Defendant's Motion to Dismiss argues that the charging statute in this case violates his right to bear arms under the Second Amendment to the United States Constitution. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, the right secured by the Second Amendment is "not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on…laws forbidding the carrying of firearms in sensitive places such as… government buildings.").

The charging statute – 38 C.F.R. § 1.218(a)(13) and (b)(37)  – prohibits the possession of "firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes" at "all property under the charge and control of VA."

In an unbroken line of cases – most recently *New York Rifle and Pistol Association v. Bruen* in 2022 – the Supreme Court has held that the right to bear arms is not unlimited and laws which prohibit possession of firearms in "sensitive places," such as federal government buildings, do not violate the Second Amendment. *See* 597 U.S. 1, 30 (2022). Similarly, the Ninth Circuit Court of Appeals, whose precedent binds the District of Idaho, has explained that "[o]ur Nation has a clear historical tradition of banning firearms at sensitive places." *Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) (upholding state laws banning firearms at public parks, beaches, and play areas).

In this case, the charging statute restricts firearms at "all property under the charge and control of [the] VA." 38 C.F.R. § 1.218(a). Because the Department of Veterans Affairs is a branch of the federal government, its property is property of the federal government – and VA buildings, as federal government buildings, are "sensitive places." *Heller*, 554 U.S. at 626. In addition, the building at issue in this case (the VAMC) is also a hospital – another type of "sensitive place." *See, e.g.*, *Antonyuk v. James*, 120 F.4th 941 (4th Cir. 2024). Therefore, because the statute in this case regulates the possession of firearms in sensitive places, it is consistent with the United States' historical tradition of firearm regulation. *Bruen*, 597 U.S. at 24. There is no basis to find that 38 C.F.R. § 1.218(a)(13) is unconstitutional.

b. **Defendant's Motion to Suppress Ada County Sheriff's Office Complaint (Dkt. 15)**

Next, Defendant moves to suppress a complaint he filed with the Ada County Sheriff's Office about Officer Davey. Defendant argues that the admission of his statements in the

complaint at trial would violate his First and Fifth Amendment rights. However, neither Amendment provides a basis for suppressing the complaint.

First, the admission of statements in the complaint would not violate the First Amendment. The First Amendment states that "Congress shall made no law…abridging the freedom of speech, or of the press…and to petition the Government for a redress of grievances." U.S. Const. amend. I. A person's First Amendment rights are violated when the government restricts or compels their speech. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586-87 (2023) (collecting cases).

Hower, if the government introduces Defendant's statements in the complaint in evidence, it will not restrict or compel Defendant's speech in any way. Defendant freely filed a complaint against Officer Davey. The government neither restricted what Defendant said in his complaint, nor forced him to make it. Therefore, there was no violation of Defendant's First Amendment rights, and it does not provide a basis to suppress his statements in the complaint.

Second, the admission of statements in the complaint in evidence would not violate the Fifth Amendment. The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. However, the Fifth Amendment privilege against self-incrimination applies "only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). The protection applies in situations where a government actor forces a defendant "to disclose the contents of his own mind." *Doe v. United States*, 487 U.S. 201, 211 (1988).

In this case, a government actor did not compel Defendant to file a complaint against Officer Davey. Defendant freely chose to file the complaint. Therefore, Defendant cannot invoke his Fifth Amendment privilege.

In sum, because using Defendant's complaint as evidence trial would not violate his rights under the First and Fifth Amendment, the complaint may be used in evidence against him.

### c.  Defendant's Motion to Suppress the Firearm (Dkt. 16)

Finally, Defendant moves to suppress the firearm Officer Davey seized from his person. Defendant argues that Officer Davey's search violated his rights under the Fourth Amendment because it was an unlawful *Terry* stop and frisk. Specifically, Defendant argues that Officer Davey did not have the reasonable suspicion that Defendant possessed a firearm required to stop him, did not have the reasonable concern for safety required to frisk him, and did not conduct a physical pat frisk before lifting his shirt and seizing the firearm.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Once properly stopped, an officer may conduct a frisk for weapons where he has a reasonable fear for his own or others' safety. *Terry,* 392 U.S. at 30.  However, a *Terry* frisk does not need to be a pat-down. Where an officer has specific and articulable facts that a suspect has a firearm concealed in his waistband, he may directly retrieve it. *Adams v. Williams*, 407 U.S. 143, 148 (1972) (The Court held that, based on an informant's tip that defendant was carrying a firearm at his waist, "[u]nder these circumstances the policeman's action in reaching [through a car window] to the spot where the gun was thought to be hidden [defendant's waistband] constituted a limited intrusion designed to insure his safety," "was reasonable," and was consistent with *Terry*).

As it relates to reasonable suspicion to stop, the Ninth Circuit case of *United States v. Bontemps,* 977 F.3d 909 (9th Cir. 2020), is particularly instructive. In *Bontemps*, the Ninth

Circuit remarked that its prior holdings give "significant weight to an officer's observation of a visible bulge in an individual's clothing that could indicate the presence of a weapon." *Id.* at 914 (citations omitted). The Court further observed that, in assessing the totality of the circumstances for reasonable suspicion, "'relevant considerations may include: observing a visible bulge in a person's clothing that could indicate the presence of a weapon.'" *Id.* (citations omitted).

Like Defendant here, the defendant in *Bontemps* argued that a bulge alone is insufficient to establish reasonable suspicion "because the bulge could be anything." *Id.* at 915. The Court rejected that argument. *Id.* It explained that "in some circumstances a bulge could be an obvious indicator of a concealed firearm —for example, a bulge underneath a tight-fitting shirt that clearly reflects the distinct outline of a large gun." *Id.* Thus, the Court held that "a bulge that appears to be a concealed firearm can form the basis for a *Terry* stop in a jurisdiction where carrying a concealed weapon is presumptively unlawful." *Id.*

Once properly stopped under *Terry,* the Court held that officers may have probable cause to arrest, depending on the nature of the bulge. *Id.* at 915-16. If, say, the officers could distinguish a "gun bulge" from "drug bulge," that could amount to probable cause for arrest. *Id.* at 916 (citing *United States v. Elsoffer*, 671 F.2d 1294, 1299 n.10 (11th Cir. 1982) (holding that a bulge provided a basis for arrest, but noting "[w]e do not hold that any bulge on a person would give probable cause for an arrest")).

Accordingly, in *Bontemps,* the Court upheld the district court's denial of the defendant's motion to suppress the firearm seized from his person. The Court found that the officers saw a "very large and obvious bulge" – clearly suggestive of a concealed firearm – that justified the stop and seizure of the firearm from defendant's person.

Likewise, here, there is no basis to suppress the firearm seized from Defendant. Both the VAMC employee and Officer Davey observed the bulge of a handgun in Defendant's right waistband. Officer Davey had a significant opportunity to observe the bulge in person, having trailed Defendant for approximately 50 yards.  His conclusion that Defendant was concealing a handgun in his waistband – as opposed to something else benign – was informed by 11 years of training and experience.  Knowing that it is illegal for anyone (other than law enforcement officers) to possess a firearm on VA property, Officer Davey thus had specific and articulable facts that criminal activity was afoot, namely a violation of 38 C.F.R. § § 1.218(a)(13) & (b)(37). Accordingly, he conducted a proper *Terry* stop of Defendant.

Once he properly stopped Defendant, armed with specific and articulable facts that the bulge was a handgun, Officer Davey conducted a proper *Terry* frisk: he touched the outside of Defendant's shirt, felt the physical form of a handgun, and then reached beneath the shirt to retrieve it from his waistband holster. Even under Defendant's view of the facts – namely, that Officer Davey did not conduct a pat-down before reaching beneath his shirt – the seizure was proper. *Adams v. Williams*, 407 U.S. 143, 148. This was a limited and reasonable intrusion designed to ensure his safety and the safety of others in the medical facility. *Id.* A more involved pat-down under these circumstances would not have been reasonable or prudent. Accordingly, the Court finds no basis to suppress the firearm.[1]

### IV.    ORDER

1.  Defendant's Motion to Dismiss (Dkt. 14) is DENIED.

---

[1] Arguably, at his initial interaction with Defendant, Officer Davey had probable cause to arrest Defendant for possessing a firearm on federal property based upon his and the VAMC employee's observations that the bulge was so clearly a firearm, and not, say, a "drug bulge." *See Bontemps,* 977 F.3d at 916. If so, the seizure of the firearm was justified as a search incident to arrest. The Court does not need to reach this issue, however, because it is satisfied that the stop and seizure were proper under *Terry* and its progeny cited herein.

2.  Defendant's Motion to Suppress the Ada County Sheriff's Office Complaint (Dkt. 15) is

    DENIED.

3.  Defendant's Motion to Suppress the firearm (Dkt. 16) is DENIED.

DATED:  May 29, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge